## MORRIS B. LEVIN *v.* SINAI HOSPITAL OF BALTIMORE CITY

[No. 92, October Term, 1945.]

*Decided March 15, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Walter V. Harrison*, with whom was *Milton S. Goldbloom* on the brief, for the appellant.

*Samuel J. Fisher* and *Joseph Bernstein* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was brought by Dr. Morris B. Levin to obtain an injunction against Sinai Hospital of Baltimore, Incorporated. The amended bill of complaint alleges: (1) that defendant is a non-profit, eleemosynary, non-sectarian institution, exempted from taxation on its building and equipment, and receiving appropriations from the State and City of Baltimore, and contributions from Associated Jewish Charities and individuals; (2) that he has been practicing medicine ever since he received his degree of Doctor of Medicine in 1914, and for many years has been a member of the visiting staff of Sinai Hospital, which entitled him to treat his patients in either the private or semi-private rooms; (3) that in November, 1943, he was notified that he had been dropped from the visiting staff, but was put on the courtesy staff, entitling him to treat patients in the private rooms; (4) that the rules and regulations of the medical board, the governing body of the medical staff, which were approved as by-laws by the board of officers, are arbitrary and discriminatory, as he has been refused private rooms for his patients on many occasions, and the object of the creation of the courtesy staff was to limit the privileges of the hospital to a small group of physicians who were empowered "to make a private sanitarium of this public institution"; (5) that the rules and regulations of the medical staff constitute a restraint of trade in violation

of the Sherman Anti-Trust Act, 15 U. S. C. A., Secs. 1-3, in that defendant's officers and agents have combined and conspired to prevent him from treating his patients in the semi-private rooms; and (6) that the action of defendant, its officers and agents, has restricted the practice of his profession and injured his reputation and professional standing. Complainant prays the court to declare the rules and regulations of the medical board illegal and void, and to enjoin the hospital, its officers and agents, from interfering with his right to treat patients in its private and semi-private rooms. He is appealing from a decree sustaining the hospital's demurrer and dismissing the amended bill.

The essential difference between a public and a private corporation has long been recognized at common law. A public corporation is an instrumentality of the state, founded and owned by the state in the public interest, supported by public funds, and governed by managers deriving their authority from the state. Public institutions, such as state, county and city hospitals and asylums, are owned by the public and are devoted chiefly to public purposes. On the other hand, a corporation organized by permission of the Legislature, supported largely by voluntary contributions, and managed by officers and directors who are not representatives of the state or any political subdivision, is a private corporation, although engaged in charitable work or performing duties similar to those of public corporations. *Trustees of Dartmouth College v. Woodward,* 4 Wheat. 518, 4 L. Ed. 629, 667; *Regents of University of Maryland v. Williams,* 9 Gill & J. 365, 388, 31 Am. Dec. 72; *Hughes v. Good Samaritan Hospital,* 289 Ky. 123, 158 S. W. 2d 159. So, a hospital, although operated solely for the benefit of the public and not for profit, is nevertheless a private institution if founded and maintained by a private corporation with authority to elect its own officers and directors. *Washingtonian Home of Chicago v. City of Chicago,* 157 Ill. 414, 41 N. E. 893.

Using this test we find from the allegations of the amended bill that defendant is a private institution. It was organized as a private corporation, and it is not an instrumentality of the government for the administration of public duties. It is admitted that defendant is exempt from taxation on its hospital building, and equipment, and receives appropriations from the State and City of Baltimore. But it cannot be questioned that the Legislature has ample power to make appropriations to a private corporation established for the maintenance of a hospital. *Finan v. City of Cumberland,* 154 Md. 563, 141 A. 269. From the beginning of the state government, the Legislature has constantly made donations to special objects without regard to race, creed, or class. As Judge Bryan said in *State ex rel. Clark v. Maryland Institute,* 87 Md. 643, 663, 41 A. 126, 130: "The only condition limiting this exercise of this power is that it must in some way promote the public interest. The state has never surrendered this power to the general government, and never can surrender it without stripping itself of the means of providing for the good order, happiness and general welfare of society. The benefits conferred in this way are matters of grace and favor which the state bestows on its own citizens for worthy public reasons."

It is not necessary on this appeal to consider the question of the extent of a physician's constitutional right to practice his profession in a public hospital. The powers and duties of the officers of a public institution are regulated by statute or municipal ordinance. The powers and duties of the officers of a private corporation are regulated by its charter, constitution and by-laws. It is a general rule that a court of equity will not interfere with the internal management of a corporation, unless the act complained of is fraudulent or *ultra vires.* *Williams v. Salisbury Ice Co.,* 176 Md. 13, 26, 3 A. 2d 507; *Murray-Baumgartner Surgical Instrument Co. v. Requardt,* 180 Md. 245, 23 A. 2d 697. We hold that a private hospital has the right to exclude any physician from

practicing therein, and such exclusion rests within the sound discretion of the managing authorities. *Van Campen v. Olean General Hospital,* 210 App. Div. 204, 205 N. Y. S. 554, affirmed, 239 N. Y. 615, 147 N. E. 219; *Hughes v. Good Samaritan Hospital,* 289 Ky. 123, 158 S. W. 2d 159; *Henderson v. City of Knoxville,* 157 Tenn. 477, 9 S. W. 2d 697, 60 A. L. R. 652; *State ex rel. Wolf v. La Crosse Lutheran Hospital Ass'n,* 181 Wis. 33, 193 N. W. 994; 26 *Am. Jur., Hospitals and Asylums,* Sec. 9; 41 *C. J. S., Hospitals,* Sec. 9. A private hospital is not under a common law duty to serve everyone who applies for treatment or permission to serve. In the absence of statute, it may accept some applicants and reject others. Likewise, the directors of a private hospital corporation, having power to appoint members of its medical staff, have the authority to remove them from the staff. It has never been the policy of the State of Maryland to interfere with the power of the governing body of a private hospital to select its own medical staff. In the Act of 1945 conferring authority upon the State Board of Health to prescribe standards of safety and sanitation for all hospitals in the state, the Legislature expressly provided that nothing contained in the Act shall affect the right of each institution to employ its own personnel and staff. Acts of 1945, Chap. 210, Sec. 496G. It is clear, therefore, that since the by-laws of defendant provide that appointments to all divisions of the medical staff shall be made for only one year, appellant has no right to object to his removal from one of the divisions of the staff.

In Maryland a court of equity may properly grant injunctive relief to protect a physician in his right to treat his own patients in a hospital where its constitution and by-laws accord him that right, and also to pass upon the validity of asserted amendments to the constitution and by-laws for the purpose of determining his right to such relief. *Stevens v. Emergency Hospital of Easton,* 142 Md. 526, 121 A. 475. But it is an established rule of pleading that a bill of complaint must state fully and frankly all material facts on which the complainant relies

for relief. The bill must state facts as such, not mere conclusions from facts which it fails to disclose. It is not every statement in a bill of complaint that is admitted on demurrer. The accepted rule is that a demurrer admits the truth of the facts alleged as far as they are relevant and well pleaded, but not conclusions of law or theories of construction drawn therefrom. Further, to justify the court in issuing an injunction, the bill with any exhibits thereto must allege every material fact constituting the complainant's case, so that the court can ascertain whether there is a proper ground for the exercise of the extraordinary power of injunction. *Lamm v. Burrell,* 69 Md. 272, 14 A. 682; *Ulman v. Charles Street Avenue Co.,* 83 Md. 130, 144, 34 A. 366; *Elling v. Travers,* 162 Md. 597, 603, 160 A. 789; *Schill v. Remington-Putnam Book Co.,* 182 Md. 153, 158, 31 A. 2d 467, 469, 32 A. 2d 296.

In this case there is no basis for the allegation that the rules and regulations are illegal and void. The charter of the corporation provides that its affairs shall be managed by a board of officers, consisting of a president, vice-president, treasurer, and twelve directors. The by-laws confer upon the board of officers full authority to appoint the physicians and surgeons on the medical staff, and also empower the medical board to adopt all rules and regulations necessary for the staff, subject to the approval of the board of officers. The medical board divided the staff into four divisions, consulting, active, visiting, and courtesy, and authorized members of the courtesy staff to attend patients in the private rooms only. The rules and regulations of the medical board were adopted in accordance with authority conferred by the board of officers, and were approved by the board of officers, and have not been altered or repealed by the members of the corporation. The Corporation Law of Maryland expressly provides (1) that the members or stockholders of a corporation shall have full power to make, alter and repeal by-laws, (2) that the board of directors, if authorized by the by-laws so adopted, shall have the power to

make, alter and repeal additional and supplementary by-laws not inconsistent with any of the by-laws so adopted, and (3) that any such additional and supplementary by-laws may be altered or repealed by the members or stockholders. Code, 1939, Art. 23, Sec. 14.

The amended bill alleges that the adoption of the rules and regulations of the medical board constitutes a combination or conspiracy in restraint of trade in violation of the Sherman Anti-Trust Act, 15 U. S. C. A., Secs. 1-3. But there is no merit in that contention. The common law doctrines relating to contracts and combinations in restraint of trade or commerce were well understood long before the enactment of the Sherman Act. In enacting this legislation to protect the public more effectively from the growing evils of restraints on the competitive system, Congress accepted the common law concept of illegal restraint of trade or commerce. *Apex Hoisery Co. v. Leader,* 310 U. S. 469, 60 S. Ct. 982, 994, 84 L. Ed. 1311, 128 A. L. R. 1044. Section 1 of the Act makes illegal every contract, combination or conspiracy in restraint of trade or commerce among the several states; Section 2 makes illegal every combination or conspiracy which monopolizes or attempts to monopolize any part of that trade or commerce; Section 3 makes illegal every contract, combination or conspiracy in restraint of trade or commerce in the territories and in the District of Columbia. Article 41 of the Maryland Declaration of Rights provides: "That monopolies are odious, contrary to the spirit of a free government and the principles of commerce, and ought not to be suffered." A monopoly within the prohibition of our Declaration of Rights, is a privilege or power to command and control traffic in some commodity, or the operation of a trade or business to the exclusion of others, who otherwise would be at liberty to engage therein, necessarily implying the suppression of competition, and ordinarily causing a restraint of that freedom to engage in trade or commerce which the citizen enjoys by common right. A monopoly is more than a mere privilege to carry on a trade or

business or to deal in a specified commodity. It is an exclusive privilege which prevents others from engaging therein. A grant of privileges, even though monopolistic in character, does not constitute a monopoly in the constitutional sense when reasonably required for protection of some public interest, or when given in return for some public service, or when given in reference to some matter not of common right. *Raney v. Montgomery County Commissioners,* 170 Md. 183, 183 A. 548; *Goldsmith v. Mead Johnson & Co.,* 176 Md. 682, 7 A. 2d 176, 125 A. L. R. 1339. It is obvious that the rules and regulations of the medical board of Sinai Hospital do not restrain interstate trade or commerce. Their purpose was not to destroy competition or to restrain the free availability of hospital or medical services to the public.

As the board of officers of the hospital has the right to appoint the physicians on the medical staff, and did not unlawfully deprive appellant of any privilege when it failed to reappoint him on the visiting staff, we must conclude that he has failed to allege any right to an injunction. We must, therefore, affirm the decree sustaining the demurrer to and dismissing the amended bill.

*Decree affirmed, with costs.*